IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **TONY PARKER,** | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )    4:20-cv-00211-CLM |
| | ) |
| **ANDREW SAUL,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
|     **Defendant.** | ) |

### MEMORANDUM OPINION

Tony Parker seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Parker's application in an opinion written by an Administrative Law Judge ("ALJ"). The Appeals Council then denied Parker's request for review without discussing new evidence that he submitted to it. Parker argues: (1) that the ALJ should have afforded more weight to the opinion of Dr. Charles May, his orthopaedic surgeon, and (2) that the Appeals Council erred in failing to adequately review his new evidence.

As detailed below, neither the ALJ nor the Appeals Council reversibly erred. So the court will **AFFIRM** the SSA's denial of benefits.

1

I.  **Statement of the Case**

   A.  **Parker's Disability, as told to the ALJ**

Parker was 51 years old at the time of the ALJ's decision. R. 187, 46. Parker's past jobs include work as a box maker, welder helper, and store owner. R. 85.

At the ALJ hearing, Parker testified that he has right shoulder pain that makes it feel like he's got a weight tied to his arm. R. 73. Parker also stated that his two smallest fingers in his right hand go numb when he uses them, so he has trouble holding small items and buttoning. R. 73, 80–81. According to Parker, his pain requires him to spend four or five hours out of an eight-hour day in a recliner with a pillow under his elbow. R. 74–75.

Parker lives with his parents. R. 72–73. And his family helps him with chores and shopping. R. 83. Although Parker can drive, he says his neck gives him trouble if he drives far. *Id.*

   B.  **Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |

| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
|---|---|---|
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C. Parker's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Parker applied for disability insurance benefits, a period of disability, and SSI in November 2016, claiming that he was unable to work because of various ailments, including torn right rotator cuff, osteoarthritis, degenerative disc disease,

3

hypertension, and anxiety. After receiving an initial denial in January 2017, Parker requested a hearing, which the ALJ conducted in November 2018. The ALJ ultimately issued an opinion denying Parker's claims in February 2019. R. 45–58.

At Step 1, the ALJ determined that Parker was not engaged in substantial gainful activity and thus his claims would progress to Step 2. R. 51.

At Step 2, the ALJ determined that Parker suffered from the following severe impairments: torn right rotator cuff, osteoarthritis, and degenerative disc disease. R. 51–53.

At Step 3, the ALJ found that none of Parker's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R. 52. Thus, the ALJ next had to determine Parker's residual functional capacity.

The ALJ determined that Parker had the residual functional capacity to perform light work with these added limitations:

- Parker cannot climb ladders, ropes, or scaffolds;
- Parker cannot reach overhead with his right (dominant) upper extremity;
- Parker cannot perform around hazards; and
- Parker can frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl.

R. 53–55.

At Step 4, the ALJ found that Parker could not perform his past relevant work. R. 56. At Step 5, the ALJ determined that Parker could perform jobs, such as cashier II, parking lot attendant, and bench assembler, that exist in significant numbers in the national economy and thus Parker was not disabled under the Social Security Act. R. 56–57.

### D. The Appeals Council Decision

Parker requested an Appeals Council review of the ALJ's decision. R. 1–3. While Parker's appeal to the Appeals Council was pending, Parker received treatment at Cherokee Pain Management, LLC. R. 4–39. Parker's attorney then sent Parker's treatment records from two November 2019 visits to Cherokee Pain Management to the Appeals Council. R. 10–39. On December 17, 2019, without specifically mentioning this new evidence, the Appeals Council denied Parker's request for review, stating that "[w]e found no reason under our rules to review the Administrative Law Judge's decision." R. 1. Because the Appeals Council found no reason to review the ALJ's opinion, the ALJ's decision became the final decision of the Commissioner.

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g);

*Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

### III. Legal Analysis

Parker makes two arguments for why the SSA erred in denying his application for benefits. First, Parker argues that the ALJ erred by giving improper weight to opinion evidence from Dr. Charles May. Second, Parker asserts that the Appeals Council erred by failing to consider the new evidence from Cherokee Pain Management. The court addresses each argument in turn.

#### A. The ALJ properly evaluated Dr. May's opinion evidence.

Parker's argument that the ALJ erred centers on the ALJ's evaluation of a medical source statement filled out by Dr. May on February 9, 2017. Dr. May is an orthopedic surgeon who treated Parker for three years and who performed two surgeries on Parker's torn right rotator cuff. The 7-page medical source statement required Dr. May to check boxes, circle 'yes' or 'no,' and answer short questions about various disability-related topics. R. 428–33.

According to Dr. May's medical source statement, Parker can only occasionally lift and carry up to 10 pounds. R. 428. And Parker can sit for only 4 hours total in an 8-hour workday. R. 429. Dr. May also stated that Parker could only occasionally reach with his right hand and could never reach overhead with that hand. R. 430. In describing Parker's postural activities, Dr. May checked that Parker could occasionally climb stairs and ramps; stoop; and kneel. R. 431. But Dr. May said that Parker could never climb ladders or scaffolds; balance; crouch; or crawl. *Id.* In describing Parker's environmental limitations, Dr. May checked that Parker could frequently operate a motor vehicle and only occasionally move mechanical parts; be exposed to humidity and wetness; and be exposed to dust, fumes, and pulmonary irritants. R. 432. Dr. May stated that Parker could never be exposed to unprotected heights, extreme cold, extreme heat, or vibrations. *Id.*

After each category of limitations identified in the medical source statement, Dr. May was asked to "identify the particular medical or clinical findings . . . which support your assessment or [explain] any limitations and why the findings support the assessment." In response to this question, Dr. May stated that Parker's postural limitations were because he had "limited use of [right extremity] due to chronic rotator cuff tear." R. 431. But Dr. May did not explain the basis for the other limitations that he identified. *See* R. 428–33.

The ALJ gave "lesser weight" to the medical source statement from Dr. May. R. 55. According to the ALJ, the medical source statement was entitled to lesser weight because:

> It is not in a consecutive sequence of the dates on the treatment records and there is no consistent treatment record or form of this nature in the remainder of those records. The form is not consistent with Dr. May's treatment note dated April 14, 2017. He reported that while the claimant might not regain full motion and strength in the shoulder he expected him to have functional motion and strength (Exhibit 3F). Overall, this form appears to have been prepared to influence the decision in this case, and not as an incident of the claimant's treatment regimen.

*Id.*

Parker argues that the ALJ erred in affording Dr. May's medical source statement lesser weight because Dr. May was a treating source whose opinions the ALJ had to give substantial or considerable weight absent good cause to discount his opinions. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quotation omitted).

The court finds that the ALJ articulated good cause to give lesser weight to the medical source statement from Dr. May. As the ALJ noted, the extreme limitations identified in the medical source statement contradict Dr. May's April 2017 statement that "Mr. Parker and I again discussed that while he may not regain

full motion and strength in the shoulder, I certainly expect him to have functional motion and strength." R. 422.

The ALJ also correctly noted that the medical source statement was different than Parker's other treatment records from Dr. May, which the ALJ gave good weight. Although Parker points to some medical findings within these treatment records that support the limitations identified in the medical source statement, it is not this court's role to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Winschel*, 631 F.3d at 1178. And other portions of Dr. May's treatment notes conflict with the medical source statement. For example, on February 6, 2017, three days before Dr. May filled out the medical source statement, Dr. May noted that "[w]hile Parker may not have normal shoulder function, per se, I do expect him to be able to have a functional shoulder." R. 424. Having reviewed all of Dr. May's treatment notes, the medical source statement, and the ALJ's hearing decision, the court finds that a reasonable person could conclude, as the ALJ did, that Dr. May's treatment notes contradict his medical source statement. So substantial evidence supports the ALJ's decision to discount the limitations Dr. May identified in the medical source statement. *See Winschel*, 631 F.3d at 1179.

And the court rejects Parker's argument that the ALJ had to assess a residual functional capacity that included the limitations identified by Dr. May in the medical

source statement. At the ALJ hearing level, it is the ALJ's responsibility alone to assess a claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). And an ALJ need not base his residual functional capacity assessment on a doctor's medical opinion. *See Green v. Soc. Sec. Admin*, 223 F. App'x 915, 923–24 (11th Cir. 2007). Here, the ALJ properly fulfilled his role by resolving conflicting record evidence to assess Parker's residual functional capacity. So the court finds that substantial evidence supports the ALJ's residual functional capacity determination.

    **B.**    **The Appeals Council did not reversibly err.**

Parker next argues that the Appeals Council erred by failing to consider the treatment notes from Cherokee Pain Management. "Generally, a claimant may present evidence at each stage of the administrative process." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308–09 (11th Cir. 2018). Although the Appeals Council can deny review, it must consider evidence presented after the ALJ's decision if it is new, material, and chronologically relevant. *See id.* at 1309. Parker asserts that the Appeals Council: (1) failed to show in its written denial that it adequately evaluated his new evidence, and (2) should have considered the new evidence because it was both material and chronologically relevant.

    1. <u>Evaluation of new evidence</u>: At the outset, the court notes that both Parker and the Commissioner have presumed that the Appeals Council acknowledged the

treatment records from Cherokee Pain Management. Parker states that "[t]hese records were received by the Appeals Council and made part of the record of evidence with a notice being provided of December 17, 2019." Doc. 19 at 13. And the Commissioner contends that the "Appeals Council considered the evidence but found that the November 2019 evidence from Cherokee Pain clinic was not chronologically relevant or material to the period considered by the ALJ." Doc. 20 at 11.

But the court has concerns that the Appeals Council may not have had the Cherokee Pain Management medical records before it when it denied Parker's request for review. Although these records are part of the electronic file submitted by the Commissioner, R. 10–39, the Appeals Council did not make them part of the administrative record. Instead, the additional evidence that the Appeals Council made part of the administrative record on December 17 was the request for review submitted by Parker's attorney. R. 5, 185–86. The Cherokee Pain Management treatment records, which appear to have been faxed to the Appeals Council the day before it issued its denial letter, are not mentioned in either the Appeals Council's denial letter or enclosed order. R. 1–5. Under these circumstances, the court assumes that the Appeals Council did *not* look at the Cherokee Pain Management records to determine whether they were both chronologically relevant and material.

So the court must decide whether the Appeals Council's failure to consider whether this additional evidence was chronologically relevant and material warrants reversal. Parker argues that the Appeals Council must show in its written denial that it evaluated his new evidence. If he's correct, the fact that it's unclear if the Appeals Council looked at the Cherokee Pain Management records shows reversible error. But the Eleventh Circuit has already rejected Parker's argument that the cases that he cites requires the Appeals Council to give "a detailed rationale" when denying a request for review. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784-85 (11th Cir. 2014). Instead, the Appeals Council "is not required to explain its rationale for denying a request for review." *Id.* at 785.

2. <u>Chronological Relevance</u>: And the Appeals Council doesn't even have to consider additional evidence that is not new, material, and chronologically relevant. *See Hargress*, 883 F.3d at 1309. So even in circumstances where it's been unclear whether the Appeals Council reviewed additional evidence submitted to it, the Eleventh Circuit has affirmed the SSA's denial of benefits when the new evidence was either immaterial or chronologically irrelevant. *See Ashley v. Comm'r, Soc. Sec. Admin.*, 707 F. App'x 939, 946-48 (11th Cir. 2017) (treating evidence that the Appeals Council may not have considered as new evidence submitted for the first time to the district court and not remanding because the evidence was chronologically irrelevant); *Green v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 516,

520 (11th Cir. 2017) (finding no error in district court's determination that Appeals Council would have been justified in discounting conclusory physical capacities form that may not have been before it); *see also Mitchell*, 771 F.3d at 785 (holding in the alternative that Appeals Council's failure to adequately evaluate new evidence would not have made denial of benefits erroneous because the new evidence was either cumulative or chronologically irrelevant).

Parker has failed to show that the medical records from Cherokee Pain Management are chronologically relevant. The November 2019 Cherokee Pain Management treatment records postdate the ALJ's February 25, 2019 hearing decision by about 10 months. Parker's only argument that these medical records are chronologically relevant is that "all submissions describe physical and psychological symptoms that, due to their nature and severity, could bear on [his] condition during the relevant period between onset [and] the date of the decision." Doc. 19 at 19. But progress notes and treatment records from after an ALJ's hearing decision are not chronologically relevant if "nothing in these new medical records indicate[ ] the doctors considered [Parker's] past medical records or that the information in them relates to the period at issue." *Hargress*, 883 F.3d at 1309–10. Having reviewed the medical records Parker submitted to the Appeals Council, the court cannot find any information contained within them that relates back to the relevant period. So the

court finds that the treatment records are chronologically irrelevant, so the Appeals Council did not have to consider them when evaluating Parker's request for review.

## IV. Conclusion

In summary, the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision, and the Appeals Council did not err in denying Parker's request for review. So the SSA's denial of benefits is due to be **AFFIRMED**. The court will enter a separate final order that closes this case.

**DONE** this January 26, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE